**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ENPULZ AUTOMOTIVE LLC, | ) | Case No. 2:26-cv |
| Plaintiff, | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| MERCEDES-BENZ AG, | ) | |
| Defendant. | ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Enpulz Automotive LLC ("Enpulz" or "Plaintiff") for its Complaint against Defendant Mercedes-Benz AG ("Mercedes" or "Defendant") for patent infringement alleges as follows:

**THE PARTIES**

1. Enpulz is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located at 700 South Central Expressway, Suite 400 PMB 299, Allen, TX 75013.

2. On information and belief, Defendant Mercedes is a German corporation, with its principal place of business located at Mercedesstraße 120, 70372 Stuttgart, Germany. On information and belief, Defendant conducts business, either directly or through one or more of its subsidiaries, agents, affiliates, and/or intermediaries, in this judicial district and elsewhere in the United States, including, without limitation, making, using, offering to sell, selling, and/or importing products containing integrated wireless communications devices that embody the patented technology of the Asserted Patents (defined below), and enabling end-user purchasers to use such connected vehicles throughout the United States, including this Judicial District.

3. Mercedes, including its respective U.S. and foreign-based employees, agents, distributors, affiliates, business partners, retail partners, and customers (which act as part of a global network and supply chain of overseas sales and manufacturing subsidiaries), have operated as agents of one another and vicariously as parts of the same business group, working in concert together and entering into agreements that are nearer than arm's length. Mercedes and its U.S. and foreign-based employees, agents, distributors, affiliates, business partners, retail partners, and/or customers, individually and/or in concert, conduct business (and have conducted business) in the United States, including importing, shipping, distributing, offering to sell, and selling the Accused Products (defined below) that incorporate devices, systems, and processes that infringe the Asserted Patents in Texas and this District. *See Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 490 (5th Cir. 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state . . . ."); *see also Cephalon, Inc. v. Watson Pharms., Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) ("The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length.").

4. Through importation, manufacture, use, offers to sell, sales, distributions, and/or related agreements to transfer ownership of Defendant's infringing products with subsidiaries, distributors, and/or customers operating in and maintaining significant business presences in the United States, this State, and this District, Defendant does extensive business in the United States, this State, and this District.

5. Defendant operates (and has operated) in agency with its respective foreign and U.S.-based subsidiaries, affiliates, distributors, retail partners, suppliers, and customers, to provide

a distribution channel of infringing products within this District and the U.S. nationally. Defendant and/or its respective agents and foreign and U.S.-based subsidiaries, affiliates, distributors, retail partners, suppliers, and customers, purposefully direct (and have directed) the infringing products into established distribution channels within this District and the U.S. nationally.

6. On information and belief, Defendant, including its respective U.S. and foreign-based subsidiaries, employees, agents, distributors, affiliates, business partners, retail partners, and customers (which act as part of a global network and supply chain of overseas sales and manufacturing subsidiaries), have operated as agents of one another and vicariously as parts of the same business group, working in concert together and entering into agreements that are nearer than arm's length. Defendant and its U.S. and foreign-based subsidiaries, employees, agents, distributors, affiliates, business partners, retail partners, and/or customers, individually and/or in concert, conduct business (and have conducted business) in the United States, including importing, shipping, distributing, offering to sell, and selling the infringing products that incorporate devices, systems, and processes that infringed the Asserted Patents in Texas and this District.

7. Defendant and its subsidiaries operate through coordinated management, common ownership, common Mercedes-branded advertising and customer-support platforms, integrated U.S. facilities, common distribution chains and dealer/financing platforms, and overlapping Mercedes-branded infringing product lines and products involving related technologies. On information and belief, Defendant operates (and has operated) as a single business entity and/or in concert with its affiliates, distributors, subsidiaries, suppliers, retail partners, customers, and/or agents to manufacture, sell, offer to sell, import, market, advertise, and/or otherwise promote the infringing products in the United States, including in the State of Texas generally and this District in particular.

8. On information and belief, Defendant and its subsidiaries operate as a unitary business venture and are jointly and severally liable for the acts of patent infringement alleged herein. On information and belief, Defendant and its subsidiaries operate as an integrated Defendant business enterprise with respect to the infringing products, and Defendant is liable for the infringing acts alleged herein directly, vicariously, and/or through agency and alter-ego principles.

9. Through use, offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Defendant's infringing products by and/or to affiliates, distributors, subsidiaries, suppliers, business partners, retail partners, customers, and/or agents, Defendant is operating in (and has operated in) and maintaining (and has maintained) a significant business presence in the U.S. and, through its U.S. subsidiaries or agents, Defendant has done (and does) business in the U.S., the state of Texas, and in this District.

## **JURISDICTION**

10. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11. This Court has specific and general personal jurisdiction over Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because, among other things, Defendant has engaged in continuous, systematic, and substantial business in Texas and has committed and continues to commit, directly or through intermediaries (including subsidiaries, agents, distributors, affiliates, retailers, suppliers, integrators, customers, and others), acts of patent infringement in this State and this District. Such acts of infringement include making, using, testing, offering for sale, selling, and/or importing the

Accused Products in this State and this District and/or inducing others to commit acts of patent infringement in this State and District. Indeed, Defendant has purposefully and voluntarily placed, and is continuing to place, one or more infringing products into the stream of commerce through established distribution channels with the expectation and intent that such products will be sold to and purchased by consumers in the United States, this State, and this District, and with the knowledge and expectation that such products (whether in standalone form or as integrated in downstream products) will be imported into the United States, this State, and this District.

12. On information and belief, Defendant has derived substantial revenues from its infringing acts occurring within this State and this District. Defendant has substantial business in this State and this District, including (i) at least part of its infringing activities alleged herein and (ii) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported, and services provided to Texas residents vicariously through and/or in concert with its agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers.

13. On information and belief, Defendant controls (or has controlled) or otherwise directs (or has directed) and authorizes (or has authorized) all activities of its U.S.-based (or foreign-based with the knowledge that infringing products are directed to the United States and this District) agents and/or sales and/or distribution subsidiaries. Such directed and authorized activities include the U.S.-based (and/or foreign-based) subsidiaries and/or agents having used, offered for sale, sold, and/or imported the Accused Instrumentalities, their components, processes, and/or products containing the same that incorporated the fundamental technologies and claims of the Asserted Patents. Defendant's U.S.-based (and/or foreign-based) sales and/or distribution subsidiaries and/or agents were authorized to import, distribute, sell, or offer for sale the Accused

Instrumentalities on behalf of Defendant. For example, Defendant researched, designed, developed, and manufactured infringing products, and then directed its U.S.-based (and/or foreign-based) sales subsidiaries, distributors, business partners, agents, and/or others to import, distribute, offer for sale, and sell infringing products in the United States. *See, e.g.*, *Am. Pats. LLC v. D-Link Corp.*, No. 4:19-CV-764, 2020 WL 3972740, at *5 (E.D. Tex. July 14, 2020) ("It is enough, for a prima facie case, that [defendant] appears to have had a role in orchestrating—through its wholly owned subsidiary—the accused products' placement in the stream of commerce.") (emphasis omitted); *see also United States v. Hui Hsiung*, 778 F.3d 738, 743 (9th Cir. 2015) (finding that the sale of infringing products to third parties rather than for direct import into the U.S. did not "place [defendants'] conduct beyond the reach of United States law [or allow them to] escape culpability under the rubric of extraterritoriality"). Thus, Defendant conducted infringing activities, and Defendant's U.S.-based (and foreign-based) sales subsidiaries and/or distributors and/or agents and/or business partners conducted infringing activities on behalf of Defendant.

14. On information and belief, Defendant's U.S.-based (and/or foreign-based) sales and/or distribution subsidiaries' and/or agents' presence (including in the past) in the United States gave Defendant substantially the same business advantages that it would have enjoyed if Defendant conducted its business through its own offices or paid agents. Defendant's U.S.-based (and/or foreign-based) sales subsidiaries and/or distributors and/or agents were authorized to import, distribute, sell, and offer for sale Defendant's products, including the Accused Instrumentalities, as well as their components and processes related to the same, on behalf of Defendant. For example, Defendant's U.S.-based (and/or foreign-based) sales subsidiaries and/or agents operated within Defendant's global network and supply chain of sales. In the U.S., including within the Eastern District of Texas, the Accused Instrumentalities, as well as their

components and processes related to the same, were imported, distributed, offered for sale, and/or sold.

15. Via Defendant's alter egos, agents, business partners, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers that maintained a business presence, operated in, and/or resided in the U.S., Defendant's products, including products and processes accused of infringing the Asserted Patents, are or have been widely distributed and sold in Texas including within this District. *See Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corp.*, No. 2:18-CV-00197-JRG, 2019 WL 1979930, at *2-4 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently pleaded that purchases of infringing products outside of the United States for importation into and sales to customers in the U.S. may constitute a sale or an offer to sell under § 271(a)).

16. On information and belief, Defendant has placed infringing products and/or products that practiced infringing processes into the stream of commerce via established distribution channels comprising at least its subsidiaries, business partners, affiliates, distributors, and/or agents or customers, with the knowledge and/or intent that those products were imported, used, offered for sale, and sold in the United States and Texas, including in this District. As a result, Defendant has, vicariously through and/or in concert with alter egos, agents, intermediaries, distributors, affiliates, importers, customers, subsidiaries, and/or consumers, placed infringing products into the stream of commerce via established distribution channels with the knowledge and/or intent that those products were sold and continue to be sold in the United States and Texas, including in this District.

17. The minimum contacts test is satisfied because Defendant delivers its products (e.g., Mercedes-branded vehicles) into the stream of commerce with the expectation that they will be purchased by consumers in Texas. *See Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1566* (Fed. Cir. 1994) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 100 S. Ct. 559, 567 (1980)); *see also Universal Connectivity Techs. Inc. v. Lenovo Grp. Ltd.*, No. 2:23-CV-00449-JRG, 2024 WL 4519760, at *2 (E.D. Tex. Oct. 17, 2024). For example, and on information and belief (and as provided for herein), Defendant imports, and/or has imported and/or shipped infringing products into the United States through and with its supply chain partners and/or agents, including, but not limited to, Defendant's subsidiaries and/or affiliates and/or agents. Defendant supplies infringing products (e.g., Mercedes-branded vehicles) to its customers, subsidiaries, affiliates, agents, and/or distributors knowing that its products accused of infringement are offered for sale, sold, imported, and/or used by Defendant, its customers, subsidiaries, affiliates, and/or agents in the United States and this District. Products accused of infringement were (and are) directed to this District and were (and are) available for purchase in this District via dealerships. The lengthy and complex distribution chain does not insulate Defendant from suit in Texas.

18. Defendant intentionally placed its Mercedes-branded vehicles in a distribution chain flowing from Asia to the United States, Texas, and this District. For example, Defendant intentionally places Mercedes-branded vehicles in a distribution or supply chain knowing that such Mercedes-branded vehicles ultimately arrive in the United States market and this District through, at least, its direct and indirect customers such as dealerships. Defendant, through its sales of Mercedes-branded vehicles downstream knew (or should have reasonably known) the likely destination of the products, where Defendant's conduct and connections with Texas and this

District were such that Defendant should have reasonably anticipated being brought to court in this District.

19. Also, by way of example, and on information and belief, Defendant has (and has had) U.S.-based (and/or foreign-based) employees that work in connection with the infringing products.

20. In addition, Defendant, directly or through its wholly owned subsidiaries and/or agents, has knowingly induced, and continues to knowingly induce, infringement within this State and this District by advertising, marketing, offering for sale and/or selling the Accused Products (as more particularly identified and described throughout this Complaint) that incorporate the fundamental technologies covered by the Asserted Patents. Such advertising, marketing, offering for sale and/or selling of infringing products is directed to consumers, customers, manufacturers, integrators, suppliers, distributors, resellers, partners, and/or end users, and this includes providing instructions, user manuals, advertising, and/or marketing materials that facilitate, direct and encourage use of infringing functionality with Defendant's knowledge thereof.

21. Defendant has, in the multitude of ways described above, availed itself of the benefits and privileges of conducting business in this State and willingly subjected itself to the exercise of this Court's personal jurisdiction over it. Defendant also has sufficient minimum contacts with this forum through its transaction of substantial business in this State and this District and its commission of acts of patent infringement as alleged in this Complaint that are purposefully directed towards this State and District.

22. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident in the United States and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

23. In addition, or in the alternative, this Court has personal jurisdiction over Defendant pursuant to Fed. R. Civ. P. 4(k)(2).

**PATENTS-IN-SUIT**

24. On July 17, 2018, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,023,020 (the "'020 Patent") entitled "Look Ahead Vehicle Suspension System." A true and correct copy of the '020 Patent is available at: https://patentimages.storage.googleapis.com/bb/da/e6/85e8c232c0b808/US10023020.pdf.

25. On November 6, 2018, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,118,454 (the "'454 Patent") entitled "Look Ahead Vehicle Suspension System." A true and correct copy of the '454 Patent is available at: https://patentimages.storage.googleapis.com/8d/42/cf/8da10912ec23d9/US10118454.pdf.

26. On June 18, 2019, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,322,615 (the "'615 Patent") entitled "Look Ahead Vehicle Suspension System." A true and correct copy of the '615 Patent is available at: https://patentimages.storage.googleapis.com/09/6e/88/49812359542fbb/US10322615.pdf.

27. On November 19, 2019, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,479,158 (the "'158 Patent") entitled "Look Ahead Vehicle Suspension System." A true and correct copy of the '158 Patent is available at: https://patentimages.storage.googleapis.com/5f/7d/78/77f4b1c2050c24/US10479158.pdf.

28. Enpulz is the sole and exclusive owner of all right, title, and interest in the '020 Patent, the '454 Patent, the '615 Patent, and the '158 Patent (collectively, the "Patents-in-Suit" or "Asserted Patents") and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. Enpulz also has the

right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

29. Enpulz and any assignees have at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit. On information and belief, Enpulz and all prior assignees have never licensed the Patents-in-Suit.

## FACTUAL ALLEGATIONS

30. The Patents-in-Suit generally relate to systems and methods for sensing and/or imaging upcoming roadway conditions and using that information to proactively and independently adjust a vehicle's suspension before its wheels encounter the detected conditions. The technology described in the Patents-in-Suit was developed by James D. Bennett. For example, this technology is infringed by Mercedes' ADAS systems, such as the Active Speed Limit Assist System and the Active Brake Assist System, and the E-ACTIVE BODY CONTROL System with Road Surface Scan, AMG Active Ride Control, and/or Car-to-X predictive AIRMATIC, including previous versions thereof, included in vehicles, in all trims and configurations, such as the Mercedes GLE, GLS, Mercedes-Maybach GLS, S-Class, Mercedes-Maybach S-Class, E-Class, GLC, SL, AMG GT, G-Class, AMG SL Roadster, AMG GT Coupe, EQE, EQS, among other vehicles (collectively, the "Accused Products").

31. Defendant has infringed and continues to infringe the Patents-in-Suit by one or more of making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or importing commercial and personal vehicles, which are used or tested by Defendant and its direct or indirect customers or users in the United States.

## COUNT I
**(Infringement of the '020 Patent)**

32. Paragraphs 1 through 31 are incorporated by reference as if fully set forth herein.

33. Enpulz has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the ’020 Patent.

34. Defendant has and continues to directly infringe the ’020 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by one or more of making, using, offering to sell, selling, importing into the United States, and/or exporting from the United States the Accused Products that satisfy each and every limitation of one or more claims of the ’020 Patent. The Accused Products include, but are not limited to, vehicles with Defendant’s ADAS systems, including the Active Speed Limit Assist System and the Active Brake Assist, and the E-ACTIVE BODY CONTROL System with Road Surface Scan, included in all trims and configurations, such as the 2026 Mercedes-Maybach GLS 600. The 2026 Mercedes-Maybach GLS 600 is exemplary and representative of the Accused Products.

35. For example, Defendant has and continues to directly infringe at least Claim 11 of the ’020 Patent by making, using, offering to sell, selling, and/or importing the Accused Products into the United States, and/or exporting from the United States the Accused Products that include vehicles with Defendant’s ADAS systems, including the Active Speed Limit Assist System and the Active Brake Assist, and the E-ACTIVE BODY CONTROL System with Road Surface Scan, or equivalents thereof, such as in the 2026 Mercedes-Maybach GLS 600, among other products.

36. The 2026 Mercedes-Maybach GLS 600 comprises a motor vehicle used on a roadway, the motor vehicle having at least a front tire and a rear tire, the motor vehicle comprising: processing circuitry; a first adjustable suspension assembly associated with the front tire; a second adjustable suspension assembly associated with a rear tire, the first adjustable suspension assembly and the second adjustable suspension assembly being independently adjustable in response to signals from the processing circuitry. For example, the 2026 Mercedes-Maybach GLS 600’s E-

ACTIVE BODY CONTROL System uses electronically controlled suspension assemblies at individual wheels. A stereo camera scans the roadway ahead, enabling the system to detect road characteristics such as bumps and adjust spring rate, damping, and leveling accordingly.




Standard

**E-ACTIVE BODY CONTROL**

An innovative suspension combines enhanced capabilities with uncanny comfort. E-ACTIVE BODY CONTROL can scan the road surface ahead via a stereo camera and adapt the spring rate, damping and leveling at each wheel. Benefiting from the vehicle's 48-volt electronics, the system can quickly counteract lean, pitch and dive, and even tilt into curves, to quell uneven surfaces and reduce the forces felt by passengers. It can even help rock the vehicle free in sand by rapidly "pumping" the suspension.[1]

E-ACTIVE BODY CONTROL is an electrohydraulic suspension system with variable damping for improved driving comfort. The integrated all-round level control system uses automatic load compensation to ensure the best possible suspension and a consistent level of ground clearance. When driving at speed, the vehicle is lowered automatically to improve driving safety and reduce energy consumption. The suspension setting is adjusted depending on the road surface, vehicle load and the drive program selected. You also have the option of manually adjusting the vehicle level.

[1] https://www.mbusa.com/en/vehicles/model/gls/maybach/gls600z4

Damping adjustment is controlled separately for each wheel and depends on the following factors:

- Driving style, e.g. sporty
- Road condition, e.g. bumps
- Drive program

[2]

Chassis

| | |
|---|---|
| Suspension | **4-wheel independent double-wishbone front/multilink rear with self-leveling E-ACTIVE BODY CONTROL** |



[3]

## Data processing in the vehicle

**ELECTRONIC CONTROL UNITS**

Electronic control units are installed in your vehicle. Control units process data they receive, generate themselves or exchange with each other, for example from vehicle sensors. Some control units are essential for safe functioning of your vehicle, some provide support for driving operation, e.g. driving assistance systems, and others facilitate comfort or infotainment functions.

- **Vehicles with level control:** suspension
  - Spring system and damping
  - Vehicle level (speed-dependent)

[4]

[2] https://www.mbusa.com/en/owners/manuals/maybach_gls-suv-2026-07-x167-mbux/e-active-body-control/function-of-e-active-body-control
[3] https://www.mbusa.com/en/vehicles/model/gls/maybach/gls600z4#specifications
[4] https://www.mbusa.com/css-oom/assets/en-us/pdf/mercedes-gls-suv-2026-july-x167-mbux-operators-manual-2.pdf, at 121, 367.


[5]

37. The 2026 Mercedes-Maybach GLS 600 comprises a front reflection sensor disposed to collect first information about a first portion of the roadway, the first portion of the roadway being located in front of the front tire. For example, the 2026 Mercedes-Maybach GLS 600's E-ACTIVE BODY CONTROL uses electronic control units and vehicle sensors to process road information. Its camera continuously scans the road surface ahead to detect road irregularities and adjusts suspension behavior accordingly for improved stability and comfort while driving conditions.

Data processing in the vehicle

**ELECTRONIC CONTROL UNITS**
Electronic control units are installed in your vehicle. Control units process data they receive, generate themselves or exchange with each other, for example from vehicle sensors. Some control units are essential for safe functioning of your vehicle, some provide support for driving operation, e.g. driving assistance systems, and others facilitate comfort or infotainment functions.

A number of driving and driving safety systems use radar or ultrasonic sensors and cameras to monitor the surroundings in front of, behind or next to the vehicle.

[5] https://www.youtube.com/watch?v=Df2mM5jP1W0, timestamp: 1:11 of 2:02.



1 Cameras in the windshield
2 Cameras in the exterior mirrors
3 Front radar
4 Front camera
5 Corner radars
6 Ultrasonic sensors
7 Reversing camera [6]

E-ACTIVE BODY CONTROL in the GLS also has the curve inclination function CURVE: like a motorcycle, the GLS leans into bends and thereby allows cornering in three stages with practically no centrifugal force. If the GLS is equipped with a stereo multi-purpose camera, ROAD SURFACE SCAN becomes possible: the camera continuously scans the road surface, while the suspension responds in advance to any undulations before the vehicle drives over them and largely compensates for them. In this way, the GLS improves the perceived road quality. [7]


[8]

38. The 2026 Mercedes-Maybach GLS 600 comprises the processing circuitry being configured to receive and analyze the first information to identify a roadway characteristic; the processing circuitry being further configured to respond to the identification of the roadway characteristic by: determining whether and when to direct a first adjustment of the first adjustable suspension assembly and a second adjustment of the second adjustable suspension assembly, the second adjustment being coordinated with and independent of the first adjustment in an attempt to

[6] https://www.mbusa.com/css-oom/assets/en-us/pdf/mercedes-gls-suv-2026-july-x167-mbux-operators-manual-2.pdf, at 121, 404-05.
[7] https://media.mbusa.com/news/the-new-mercedes-benz-gls-2020
[8] https://www.mbusa.com/en/vehicles/model/gls/maybach/gls600z4

accommodate the roadway characteristic. For example, the Mercedes-Maybach GLS 600 has an independent multi-link rear suspension and Double Wishbone front suspension. An electronic control unit uses data from the sensors of the Mercedes-Maybach GLS 600 SUV to adjust the front and rear suspensions individually.

## Data processing in the vehicle

**ELECTRONIC CONTROL UNITS**

Electronic control units are installed in your vehicle. Control units process data they receive, generate themselves or exchange with each other, for example from vehicle sensors. Some control units are essential for safe functioning of your vehicle, some provide support for driving operation, e.g. driving assistance systems, and others facilitate comfort or infotainment functions. [9]



**Chapter 3: Benefits of active technology**

1:15 system as it detects each motion ABC can change the length of each strut in as little as 10 milliseconds this generates

1:23 a counter Force to compensate for the forces acting on the car with every movement ABC quickly

1:31 takes action at each wheel to help keep the whole car level so handling is flatter safer and sportier while the

1:40 ride stays incredibly smooth Superior control Supreme comfort that doesn't [10]

---

[9] https://www.mbusa.com/css-oom/assets/en-us/pdf/mercedes-gls-suv-2026-july-x167-mbux-operators-manual-2.pdf, at 121.
[10] https://www.youtube.com/watch?v=Df2mM5jP1W0, timestamp: 1:11 of 2:02.

| Chassis | |
|---|---|
| Suspension | **4-wheel independent double-wishbone front/multilink rear with self-leveling E-ACTIVE BODY CONTROL** |

[11]

Standard

**E-ACTIVE BODY CONTROL**

An innovative suspension combines enhanced capabilities with uncanny comfort. E-ACTIVE BODY CONTROL can scan the road surface ahead via a stereo camera and adapt the spring rate, damping and leveling at each wheel. Benefiting from the vehicle's 48-volt electronics, the system can quickly counteract lean, pitch and dive, and even tilt into curves, to quell uneven surfaces and reduce the forces felt by passengers. It can even help rock the vehicle free in sand by rapidly "pumping" the suspension.

[12]

39. The 2026 Mercedes-Maybach GLS 600 comprises the processing circuitry being configured to receive and analyze the first information to identify a roadway characteristic; the processing circuitry being further configured to respond to the identification of the roadway characteristic by: determining whether to invoke an automatic driving function in an attempt to avoid the roadway characteristic; and determining whether to invoke a safety system to prepare for an encounter with the roadway characteristic. For example, the 2026 Mercedes-Maybach GLS 600 has automatic-driving and safety aspects through automatic driving (e.g., Active Speed Limit Assist and a safety system (e.g., Active Brake Assist). Its cameras and radar detect roadway characteristics, posted speed limits, vehicles, and pedestrians, enabling speed adjustment, collision warnings, and automatic braking to avoid or mitigate roadway hazards.

[11] https://www.mbusa.com/en/vehicles/model/gls/maybach/gls600z4#specifications
[12] https://www.mbusa.com/en/vehicles/model/gls/maybach/gls600z4

Standard

**Active Speed Limit Assist**

Active Speed Limit Assist can detect posted speed-limit signs and, along with information in the navigation system's map database, automatically adapt your cruising speed accordingly. As you first engage DISTRONIC® on a drive, the system can also set your cruising speed to match the posted speed with just a single touch of the cruise-control "set" button.

Standard

**Active Brake Assist with Cross-Traffic Function**

At certain in-town driving speeds, radar and advanced cameras can scan the area ahead of the vehicle to help detect a potential collision with vehicles approaching or crossing from either side of an intersection ahead, or with a pedestrian in the car's path. When the driver responds to the system's alert by braking, it can precisely apply brake force to help prevent such an accident or help reduce its severity. If it senses a pedestrian in your path, the system can automatically apply the brakes.[13]

**BRAKE ASSIST COMPRISES THE FOLLOWING FUNCTIONS:**

- Collision warning
- Autonomous braking function
- Situation-based brake force boosting

Brake Assist can help to minimize the risk of a collision with vehicles, motorbikes, bikes and pedestrians, or to mitigate the effects of such a collision.

If Brake Assist detects a collision, a collision warning is issued. An intermittent warning tone will sound, and the distance warning lamp will light up.

If a changed speed limit is detected and the automatic adoption of speed limits is switched on, this is automatically adopted as the stored speed (→ page 426).

Speed limits below 12 mph (20 km/h) are not adopted.

Adjustment of the travel speed is initiated no later than when the vehicle is level with the traffic sign. For signs indicating entry into an urban zone, the speed is adapted according to the speed permitted within the built-up area. The speed limit indicator on the driver display is always updated when the vehicle is level with the traffic sign.[14]

---

[13] *Id.*

[14] https://www.mbusa.com/css-oom/assets/en-us/pdf/mercedes-gls-suv-2026-july-x167-mbux-operators-manual-2.pdf, at 424, 441.

40. Defendant has and continues to indirectly infringe one or more claims of the ’020 Patent by knowingly and intentionally inducing others, including Mercedes’ customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology.

41. Defendant, with knowledge[15] that these products, or the use thereof, infringe the ’020 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the ’020 Patent by providing these products to customers and end-users for use in an infringing manner. Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, and instructing its officers, agents, and employees to not review the patents of others, including specifically those related to Defendant’s specific industry, with the subjective belief that there was a high probability that Defendant would learn of its infringing activities, thereby remaining willfully blind to the ’020 Patent at least as early as the issuance of the ’020 Patent.

42. Defendant has and continues to induce infringement by others, including customers and end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the ’020 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce

[15] Defendant’s corporate predecessor, Daimler AG, cited to the ’020 Patent family in connection with at least one of its own foreign patent applications, including DE102010044263A entitled “Device and method for controlling an active chassis of a vehicle,” which was published on March 8, 2012. Accordingly, Defendant had knowledge of the ’020 Patent as early as March 8, 2012, if not sooner. *See* https://patents.google.com/patent/US10023020B2/en?oq=10%2c023%2c020+#citedBy; https://patents.google.com/patent/DE102010044263A1/en?oq=10%2c023%2c020+.

infringement by its customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's websites, product literature and packaging, and other publications.[16] For example, Defendant provides customers and end-users with Operator's Manuals for their specific vehicles, as well as access to other vehicle information. On information and belief, Defendant's Operator's Manuals and other vehicle information documents are prepared to instruct customers and end-users on how to use the Accused Products in an infringing manner. On information and belief, ADAS systems, such as Active Speed Limit Assist System and the Active Brake Assist, and the E-ACTIVE BODY CONTROL System with Road Surface Scan are on automatically, and therefore, the operation of the Accused Products necessarily infringes the '020 Patent. Alternatively, Defendant's instructional materials, such as the Operator's Manuals, instruct Defendant's customers and end-users on how to enable the infringing systems, thereby inducing infringement of the '020 Patent.

43. Because of Defendant's inducement, Defendant's customers and end-users use the Accused Products in a way Defendant intends and directly infringes the '020 Patent. Defendant performs these affirmative acts with knowledge of the '020 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '020 Patent.

44. Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '020 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District

[16] *See* 2026 Mercedes-Maybach GLS 600 Operator's Manual, available at: https://www.mbusa.com/css-oom/assets/en-us/pdf/mercedes-gls-suv-2026-july-x167-mbux-operators-manual-2.pdf.

and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '020 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '020 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '020 Patent. The accused components include, but are not limited to, the hardware and software components of Mercedes' ADAS systems and E-ACTIVE BODY CONTROL. Defendant performs these affirmative acts with knowledge of the '020 Patent and with intent, or willful blindness, that they cause the direct infringement of the '020 Patent.

45. Enpulz has suffered damages as a result of Defendant's direct and indirect infringement of the '020 Patent in an amount to be proved at trial.

46. Enpulz has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '020 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT II
## (Infringement of the '454 Patent)

47. Paragraphs 1 through 31 are incorporated by reference as if fully set forth herein.

48. Enpulz has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '454 Patent.

49. Defendant has and continues to directly infringe the '454 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by one or more of making, using, offering to sell, selling, importing into the United States, and/or exporting from the United States the Accused Products that satisfy each and every limitation of one or more

claims of the '454 Patent. The Accused Products include, but are not limited to, vehicles with Defendant's ADAS systems, including the Active Speed Limit Assist System and the Active Brake Assist, and the E-ACTIVE BODY CONTROL System with Road Surface Scan, included in all trims and configurations, such as the 2026 Mercedes-Maybach GLS 600. The 2026 Mercedes-Maybach GLS 600 is exemplary and representative of the Accused Products.

50. For example, Defendant has and continues to directly infringe at least Claim 8 of the '454 Patent by making, using, offering to sell, selling, and/or importing the Accused Products into the United States, and/or exporting from the United States the Accused Products that include vehicles with Defendant's ADAS systems, including the Active Speed Limit Assist System and the Active Brake Assist, and the E-ACTIVE BODY CONTROL System with Road Surface Scan, or equivalents thereof, such as in the 2026 Mercedes-Maybach GLS 600, among other products.

51. The 2026 Mercedes-Maybach GLS 600 comprises a vehicle configured to move along a roadway that has an upcoming roadway concern located in front of the vehicle, the vehicle comprising: an independently adjustable suspension system. For example, the 2026 Mercedes-Maybach GLS 600 is equipped with the E-ACTIVE BODY CONTROL and Road Surface Scan, which is configured to travel along a roadway and detect upcoming road unevenness, such as bumps, before the vehicle drives over them. The 2026 Mercedes-Maybach GLS 600 is further equipped with pedestrian detection, which can detect pedestrians ahead of the vehicle.



Standard

**E-ACTIVE BODY CONTROL**

An innovative suspension combines enhanced capabilities with uncanny comfort. E-ACTIVE BODY CONTROL can scan the road surface ahead via a stereo camera and adapt the spring rate, damping and leveling at each wheel. Benefiting from the vehicle's 48-volt electronics, the system can quickly counteract lean, pitch and dive, and even tilt into curves, to quell uneven surfaces and reduce the forces felt by passengers. It can even help rock the vehicle free in sand by rapidly "pumping" the suspension.



Standard

**Active Brake Assist with Cross-Traffic Function**

At certain in-town driving speeds, radar and advanced cameras can scan the area ahead of the vehicle to help detect a potential collision with vehicles approaching or crossing from either side of an intersection ahead, or with a pedestrian in the car's path. When the driver responds to the system's alert by braking, it can precisely apply brake force to help prevent such an accident or help reduce its severity. If it senses a pedestrian in your path, the system can automatically apply the brakes. [17]

[17] https://www.mbusa.com/en/vehicles/model/gls/maybach/gls600z4

> E-ACTIVE BODY CONTROL is an electrohydraulic suspension system with variable damping for improved driving comfort. The integrated all-round level control system uses automatic load compensation to ensure the best possible suspension and a consistent level of ground clearance. When driving at speed, the vehicle is lowered automatically to improve driving safety and reduce energy consumption. The suspension setting is adjusted depending on the road surface, vehicle load and the drive program selected. You also have the option of manually adjusting the vehicle level.

[18]

52. By way of further example, the E-ACTIVE BODY CONTROL System individually adjusts the spring and damping forces at each wheel, providing an independently adjustable suspension system.

> Individual wheel control is a function of the suspension, which can be used to set the vehicle level for each wheel individually. This can help to improve alignment of the body when driving off-road.

[19]

> Damping adjustment is controlled separately for each wheel and depends on the following factors:
>
> - Driving style, e.g. sporty
> - Road condition, e.g. bumps
> - Drive program
>
> E-ACTIVE BODY CONTROL includes the following components and functions
>
> - Curve inclination function
> - Air suspension with automatic level control
> - Recovery mode (Function of recovery mode)
> - Individual wheel control (Function of individual wheel control)
> - Speed-dependent lowering to reduce fuel consumption
> - ADS PLUS: adaptive damping system with continuous adjustment of damping characteristics for improved driving comfort.

[20]

53. The 2026 Mercedes-Maybach GLS 600 comprises at least one capture element

---

[18] https://www.mbusa.com/en/owners/manuals/maybach_gls-suv-2026-07-x167-mbux/e-active-body-control/function-of-e-active-body-control

[19] https://www.mbusa.com/en/owners/manuals/maybach_gls-suv-2026-07-x167-mbux/e-active-body-control/function-of-individual-wheel-control

[20] https://www.mbusa.com/en/owners/manuals/maybach_gls-suv-2026-07-x167-mbux/e-active-body-control/function-of-e-active-body-control

configured to capture image data corresponding to the roadway. For example, the Road Surface Scan uses a multifunction camera to capture images of the roadway ahead and detect uneven road surfaces before the vehicle reaches them. Also, its cameras and radar can detect pedestrians and other vehicles in the vehicle's path.

Standard

**E-ACTIVE BODY CONTROL**

An innovative suspension combines enhanced capabilities with uncanny comfort. E-ACTIVE BODY CONTROL can scan the road surface ahead via a stereo camera and adapt the spring rate, damping and leveling at each wheel. Benefiting from the vehicle's 48-volt electronics, the system can quickly counteract lean, pitch and dive, and even tilt into curves, to quell uneven surfaces and reduce the forces felt by passengers. It can even help rock the vehicle free in sand by rapidly "pumping" the suspension.



Standard

**Active Brake Assist with Cross-Traffic Function**

At certain in-town driving speeds, radar and advanced cameras can scan the area ahead of the vehicle to help detect a potential collision with vehicles approaching or crossing from either side of an intersection ahead, or with a pedestrian in the car's path. When the driver responds to the system's alert by braking, it can precisely apply brake force to help prevent such an accident or help reduce its severity. If it senses a pedestrian in your path, the system can automatically apply the brakes.


[21]

54. The 2026 Mercedes-Maybach GLS 600 comprises a processing circuitry, based on current drive control function settings, the captured image data and vehicle motion data, is configured to both: determine whether to automatically adjust the independently adjustable suspension system to adapt to the roadway. For example, the E-ACTIVE BODY CONTROL System with Road Surface Scan uses multiple processors and sensors to analyze the driving situation and determine the suspension response based on the road surface scanned by the camera, the vehicle's speed, and the selected driving program. The system automatically adjusts spring and damper forces at each wheel to adapt the suspension to upcoming road conditions.

**Electronic control units**

Electronic control units are installed in your vehicle. Control units process data they receive, generate themselves or exchange with each other, for example from vehicle sensors. Some control units are essential for safe functioning of your vehicle, some provide support for driving operation, e.g. driving assistance systems, and others facilitate comfort or infotainment functions. [22]

E-ACTIVE BODY CONTROL is an electrohydraulic suspension system with variable damping for improved driving comfort. The integrated all-round level control system uses automatic load compensation to ensure the best possible suspension and a consistent level of ground clearance. When driving at speed, the vehicle is lowered automatically to improve driving safety and reduce energy consumption. The suspension setting is adjusted depending on the road surface, vehicle load and the drive program selected. You also have the option of manually adjusting the vehicle level. [23]

---

[21] https://www.mbusa.com/en/vehicles/model/gls/maybach/gls600z4
[22] https://www.mbusa.com/en/owners/manuals/maybach_gls-suv-2026-07-x167-mbux/data-storage/data-processing-in-the-vehicle
[23] https://www.mbusa.com/en/owners/manuals/maybach_gls-suv-2026-07-x167-mbux/e-active-body-control/function-of-e-active-body-control

> Damping adjustment is controlled separately for each wheel and depends on the following factors:
>
> - Driving style, e.g. sporty
> - Road condition, e.g. bumps
> - Drive program
>
> E-ACTIVE BODY CONTROL includes the following components and functions
>
> - Curve inclination function
> - Air suspension with automatic level control
> - Recovery mode (Function of recovery mode)
> - Individual wheel control (Function of individual wheel control)
> - Speed-dependent lowering to reduce fuel consumption
> - ADS PLUS: adaptive damping system with continuous adjustment of damping characteristics for improved driving comfort.

[24]

55. The 2026 Mercedes-Maybach GLS 600 comprises a processing circuitry, based on current drive control function settings, the captured image data and vehicle motion data, is configured to both: determine, based on the upcoming roadway concern, whether to automatically modify at least one of the current drive control function settings. For example, the 2026 Mercedes-Maybach GLS 600's E-ACTIVE BODY CONTROL System detects upcoming roadway concerns (e.g., upcoming road unevenness, potholes, etc.) and automatically lowers the speed for safety. Also, the Active Brake Assist can apply braking to reduce vehicle speed in response to detected collision risks such as pedestrian.

> E-ACTIVE BODY CONTROL is an electrohydraulic suspension system with variable damping for improved driving comfort. The integrated all-round level control system uses automatic load compensation to ensure the best possible suspension and a consistent level of ground clearance. When driving at speed, the vehicle is lowered automatically to improve driving safety and reduce energy consumption. The suspension setting is adjusted depending on the road surface, vehicle load and the drive program selected. You also have the option of manually adjusting the vehicle level.

[25]

[24] *Id.*
[25] *Id.*

> Standard
>
> **Active Brake Assist with Cross-Traffic Function**
>
> At certain in-town driving speeds, radar and advanced cameras can scan the area ahead of the vehicle to help detect a potential collision with vehicles approaching or crossing from either side of an intersection ahead, or with a pedestrian in the car's path. When the driver responds to the system's alert by braking, it can precisely apply brake force to help prevent such an accident or help reduce its severity. If it senses a pedestrian in your path, the system can automatically apply the brakes.

[26]

56. Defendant has and continues to indirectly infringe one or more claims of the ’454 Patent by knowingly and intentionally inducing others, including Mercedes’ customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology.

57. Defendant, with knowledge[27] that these products, or the use thereof, infringe the ’454 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the ’454 Patent by providing these products to customers and end-users for use in an infringing manner. Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, and instructing its officers, agents, and employees to not review the patents of others, including specifically those related to Defendant’s specific industry, with the subjective belief that there was a high probability that Defendant would learn of its infringing activities,

---

[26] https://www.mbusa.com/en/vehicles/model/gls/maybach/gls600z4

[27] Defendant’s corporate predecessor, Daimler AG, cited to the ’454 Patent family in connection with at least one of its own foreign patent applications, including DE102010044263A entitled “Device and method for controlling an active chassis of a vehicle,” which was published on March 8, 2012. Accordingly, Defendant had knowledge of the ’454 Patent as early as March 8, 2012, if not sooner. *See* https://patents.google.com/patent/US10118454B1/en?oq=10%2c118%2c454+#citedBy; https://patents.google.com/patent/DE102010044263A1/en?oq=10%2c023%2c020+.

thereby remaining willfully blind to the ’454 Patent at least as early as the issuance of the ’454 Patent.

58. Defendant has and continues to induce infringement by others, including customers and end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the ’454 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce infringement by its customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant’s websites, product literature and packaging, and other publications.[28] For example, Defendant provides customers and end-users with Operator’s Manuals for their specific vehicles, as well as access to other vehicle information. On information and belief, Defendant’s Operator’s Manuals and other vehicle information documents are prepared to instruct customers and end-users on how to use the Accused Products in an infringing manner. On information and belief, the ADAS systems, such as Active Speed Limit Assist System and the Active Brake Assist, and the E-ACTIVE BODY CONTROL System with Road Surface Scan are on automatically, and therefore, the operation of the Accused Products necessarily infringes the ’454 Patent. Alternatively, Defendant’s instructional materials, such as the Operator’s Manuals, instruct Defendant’s customers and end-users on how to enable the infringing systems, thereby inducing infringement of the ’454 Patent.

59. Because of Defendant’s inducement, Defendant’s customers and end-users use the Accused Products in a way Defendant intends and directly infringes the ’454 Patent. Defendant

[28] *See* 2026 Mercedes-Maybach GLS 600 Operator’s Manual, available at: https://www.mbusa.com/css-oom/assets/en-us/pdf/mercedes-gls-suv-2026-july-x167-mbux-operators-manual-2.pdf.

performs these affirmative acts with knowledge of the ’454 Patent and with the intent, or willful blindness, that the induced acts directly infringe the ’454 Patent.

60. Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the ’454 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant’s affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others’ use and manufacture of the Accused Products such that the ’454 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the ’454 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the ’454 Patent. The accused components include, but are not limited to, the hardware and software components of Mercedes’ ADAS systems and E-ACTIVE BODY CONTROL System. Defendant performs these affirmative acts with knowledge of the ’454 Patent and with intent, or willful blindness, that they cause the direct infringement of the ’454 Patent.

61. Enpulz has suffered damages as a result of Defendant’s direct and indirect infringement of the ’454 Patent in an amount to be proved at trial.

62. Enpulz has suffered, and will continue to suffer, irreparable harm as a result of Defendant’s infringement of the ’454 Patent, for which there is no adequate remedy at law, unless Defendant’s infringement is enjoined by this Court.

**<u>COUNT III</u>**
**(Infringement of the ’615 Patent)**

63. Paragraphs 1 through 31 are incorporated by reference as if fully set forth herein.

64. Enpulz has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the ’615 Patent.

65. Defendant has and continues to directly infringe the ’615 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by one or more of making, using, offering to sell, selling, importing into the United States, and/or exporting from the United States the Accused Products that satisfy each and every limitation of one or more claims of the ’615 Patent. The Accused Products include, but are not limited to, vehicles with Defendant’s ADAS systems, including the Active Speed Limit Assist System and the Active Brake Assist, and the E-ACTIVE BODY CONTROL System with Road Surface Scan, included in all trims and configurations, such as the 2026 Mercedes-Maybach GLS 600. The 2026 Mercedes-Maybach GLS 600 is exemplary and representative of the Accused Products.

66. For example, Defendant has and continues to directly infringe at least Claim 7 of the ’615 Patent by making, using, offering to sell, selling, and/or importing the Accused Products into the United States, and/or exporting from the United States the Accused Products that include vehicles with Defendant’s ADAS systems, including the Active Speed Limit Assist System and the Active Brake Assist, and the E-ACTIVE BODY CONTROL System with Road Surface Scan, or equivalents thereof, such as in the 2026 Mercedes-Maybach GLS 600, among other products.

67. The 2026 Mercedes-Maybach GLS 600 performs a method performed by a vehicle configured to move along a roadway, the vehicle having an independently adjustable suspension system associated with a wheel, the method comprising: detecting defect data associated with a roadway defect in advance of an encounter of the roadway defect with the wheel. For example, the 2026 Mercedes-Maybach GLS 600 has a front and a rear suspension – i.e., a double wishbone and multilink suspension. It also includes the E-ACTIVE BODY CONTROL System through which

the adjustable suspension system are adjusted separately for each wheel based on the road conditions.

Chassis

| | |
|---|---|
| Suspension | 4-wheel independent double-wishbone front/multilink rear with self-leveling E-ACTIVE BODY CONTROL |



[29]

Standard

**E-ACTIVE BODY CONTROL**

An innovative suspension combines enhanced capabilities with uncanny comfort. E-ACTIVE BODY CONTROL can scan the road surface ahead via a stereo camera and adapt the spring rate, damping and leveling at each wheel. Benefiting from the vehicle's 48-volt electronics, the system can quickly counteract lean, pitch and dive, and even tilt into curves, to quell uneven surfaces and reduce the forces felt by passengers. It can even help rock the vehicle free in sand by rapidly "pumping" the suspension.

[30]

E-ACTIVE BODY CONTROL is an electrohydraulic suspension system with variable damping for improved driving comfort. The integrated all-round level control system uses automatic load compensation to ensure the best possible suspension and a consistent level of ground clearance. When driving at speed, the vehicle is lowered automatically to improve driving safety and reduce energy consumption. The suspension setting is adjusted depending on the road surface, vehicle load and the drive program selected. You also have the option of manually adjusting the vehicle level.

[29] https://www.mbusa.com/en/vehicles/model/gls/maybach/gls600z4#specifications
[30] https://www.mbusa.com/en/vehicles/model/gls/maybach/gls600z4

Damping adjustment is controlled separately for each wheel and depends on the following factors:

- Driving style, e.g. sporty
- Road condition, e.g. bumps
- Drive program

[31]

68. By way of further example, the 2026 Mercedes-Maybach GLS 600 can continuously scan the road surface for defects ahead via the stereo cameras, before the vehicle drives over the surface.

Standard Features

- **4.0L V8 biturbo engine with mild hybrid drive**
- **Hybrid Integrated Starter-Generator**
- **ECO Start/Stop system**
- **4MATIC fully variable all-wheel drive**
- **9G-TRONIC automatic transmission with shift paddles**
- **E-ACTIVE BODY CONTROL**

[32]



1. Cameras in the windshield
2. Cameras in the exterior mirrors
3. Front radar
4. Front camera
5. Corner radars
6. Ultrasonic sensors
7. Reversing camera

[33]

---

[31] https://www.mbusa.com/en/owners/manuals/maybach_gls-suv-2026-07-x167-mbux/e-active-body-control/function-of-e-active-body-control

[32] https://www.mbusa.com/en/vehicles/model/gls/maybach/gls600z4

[33] https://www.mbusa.com/css-oom/assets/en-us/pdf/mercedes-gls-suv-2026-july-x167-mbux-operators-manual-2.pdf, at 405.

> E-ACTIVE BODY CONTROL in the GLS also has the curve inclination function CURVE: like a motorcycle, the GLS leans into bends and thereby allows cornering in three stages with practically no centrifugal force. If the GLS is equipped with a stereo multi-purpose camera, ROAD SURFACE SCAN becomes possible: the camera continuously scans the road surface, while the suspension responds in advance to any undulations before the vehicle drives over them and largely compensates for them. In this way, the GLS improves the perceived road quality.[34]

69. The 2026 Mercedes-Maybach GLS 600 performs the step of gathering motion data associated with the vehicle. For example, the 2026 Mercedes-Maybach GLS 600 motion data (e.g., speed and acceleration data) is gathered through its cameras and sensors.

> E-ACTIVE BODY CONTROL is an electrohydraulic suspension system with variable damping for improved driving comfort. The integrated all-round level control system uses automatic load compensation to ensure the best possible suspension and a consistent level of ground clearance. When driving at speed, the vehicle is lowered automatically to improve driving safety and reduce energy consumption. The suspension setting is adjusted depending on the road surface, vehicle load and the drive program selected. You also have the option of manually adjusting the vehicle level.[35]




1. Cameras in the windshield
2. Cameras in the exterior mirrors
3. Front radar
4. Front camera
5. Corner radars
6. Ultrasonic sensors
7. Reversing camera

## Data processing in the vehicle

**ELECTRONIC CONTROL UNITS**

Electronic control units are installed in your vehicle. Control units process data they receive, generate themselves or exchange with each other, for example from vehicle sensors. Some control units are essential for safe functioning of your vehicle, some provide support for driving operation, e.g. driving assistance systems, and others facilitate comfort or infotainment functions.

---

[34] https://media.mbusa.com/news/the-new-mercedes-benz-gls-2020

[35] https://www.mbusa.com/en/owners/manuals/maybach_gls-suv-2026-07-x167-mbux/e-active-body-control/function-of-e-active-body-control

> **OPERATIONAL DATA IN THE VEHICLE**
> Control units process data for operation of the vehicle.
>
> **THIS INCLUDES THE FOLLOWING DATA, FOR EXAMPLE:**
>
> - Vehicle status information such as the speed, longitudinal acceleration, lateral acceleration, number of wheel revolutions or the fastened seat belts display

[36]

70. The 2026 Mercedes-Maybach GLS 600 performs a step of identifying, in advance of the encounter and based on both the defect data and motion data, suspensions adjustments, and carrying out the suspension adjustments to the independently adjustable suspension system. For example, the 2026 Mercedes-Maybach GLS 600 includes a front and a rear suspension. It also includes the E-ACTIVE BODY CONTROL SYSTEM, through which the adjustable suspension system is adjusted separately for each wheel based on the defect data (e.g., potholes, bumps, etc.) and the vehicle's motion data (e.g., speed and acceleration data).

> E-ACTIVE BODY CONTROL is an electrohydraulic suspension system with variable damping for improved driving comfort. The integrated all-round level control system uses automatic load compensation to ensure the best possible suspension and a consistent level of ground clearance. When driving at speed, the vehicle is lowered automatically to improve driving safety and reduce energy consumption. The suspension setting is adjusted depending on the road surface, vehicle load and the drive program selected. You also have the option of manually adjusting the vehicle level.

> Damping adjustment is controlled separately for each wheel and depends on the following factors:
>
> - Driving style, e.g. sporty
> - Road condition, e.g. bumps
> - Drive program

[37]

[36] https://www.mbusa.com/css-oom/assets/en-us/pdf/mercedes-gls-suv-2026-july-x167-mbux-operators-manual-2.pdf, at 121, 405.
[37] https://www.mbusa.com/en/owners/manuals/maybach_gls-suv-2026-07-x167-mbux/e-active-body-control/function-of-e-active-body-control



1. Cameras in the windshield
2. Cameras in the exterior mirrors
3. Front radar
4. Front camera
5. Corner radars
6. Ultrasonic sensors
7. Reversing camera

## Data processing in the vehicle

**ELECTRONIC CONTROL UNITS**

Electronic control units are installed in your vehicle. Control units process data they receive, generate themselves or exchange with each other, for example from vehicle sensors. Some control units are essential for safe functioning of your vehicle, some provide support for driving operation, e.g. driving assistance systems, and others facilitate comfort or infotainment functions.

**OPERATIONAL DATA IN THE VEHICLE**

Control units process data for operation of the vehicle.

**THIS INCLUDES THE FOLLOWING DATA, FOR EXAMPLE:**

- Vehicle status information such as the speed, longitudinal acceleration, lateral acceleration, number of wheel revolutions or the fastened seat belts display [38]

71. Through demonstrations, testing, repairs, troubleshooting, training, and instructional guidance, such as at trade shows like CES in the United States, Mercedes has used the Accused Products in a manner that directly infringes at least Claim 7 of the ’615 Patent.[39]

72. Defendant has and continues to indirectly infringe one or more claims of the ’615 Patent by knowingly and intentionally inducing others, including Mercedes’ customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing

[38] https://www.mbusa.com/css-oom/assets/en-us/pdf/mercedes-gls-suv-2026-july-x167-mbux-operators-manual-2.pdf, at 121, 405.

[39] *See, e.g.*, https://www.linkedin.com/posts/ola-k%C3%A4llenius_ces2024-ces-gclass-ugcPost-7151590736092688385-QXQO/; https://janglednerves.com/experiences/mercedes-benz-ces-2024; https://media.mercedes-benz.com/ces2024

technology.

73. Defendant, with knowledge[40] that these products, or the use thereof, infringe the ’615 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the ’615 Patent by providing these products to customers and end-users for use in an infringing manner. Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, and instructing its officers, agents, and employees to not review the patents of others, including specifically those related to Defendant’s specific industry, with the subjective belief that there was a high probability that Defendant would learn of its infringing activities, thereby remaining willfully blind to the ’615 Patent at least as early as the issuance of the ’615 Patent.

74. Defendant has and continues to induce infringement by others, including customers and end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the ’615 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce infringement by its customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant’s websites, product literature and

---

[40] Defendant’s corporate predecessor, Daimler AG, cited to the ’615 Patent family in connection with at least one of its own foreign patent applications, including DE102010044263A entitled “Device and method for controlling an active chassis of a vehicle,” which was published on March 8, 2012. Accordingly, Defendant had knowledge of the ’615 Patent as early as March 8, 2012, if not sooner. *See* https://patents.google.com/patent/US10322615B2/en?oq=10%2c322%2c615+#citedBy; https://patents.google.com/patent/DE102010044263A1/en?oq=10%2c023%2c020+.

packaging, and other publications.[41] For example, Defendant provides customers and end-users with Operator's Manuals for their specific vehicles, as well as access to other vehicle information. On information and belief, Defendant's Operator's Manuals and other vehicle information documents are prepared to instruct customers and end-users on how to use the Accused Products in an infringing manner. On information and belief, ADAS systems, such as the Active Speed Limit Assist System and the Active Brake Assist, and the E-ACTIVE BODY CONTROL System with Road Surface Scan are on automatically, and therefore, the operation of the Accused Products necessarily infringes the '615 Patent. Alternatively, Defendant's instructional materials, such as the Operator's Manuals, instruct Defendant's customers and end-users on how to enable the infringing systems, thereby inducing infringement of the '615 Patent.

75. Because of Defendant's inducement, Defendant's customers and end-users use the Accused Products in a way Defendant intends and directly infringes the '615 Patent. Defendant performs these affirmative acts with knowledge of the '615 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '615 Patent.

76. Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '615 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '615 Patent is directly infringed by others. The accused components within the Accused

[41] *See* 2026 Mercedes-Maybach GLS 600 Operator's Manual, available at: https://www.mbusa.com/css-oom/assets/en-us/pdf/mercedes-gls-suv-2026-july-x167-mbux-operators-manual-2.pdf.

Products are material to the invention of the ’615 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the ’615 Patent. The accused components include, but are not limited to, the hardware and software components of Mercedes’ ADAS systems and E-ACTIVE BODY CONTROL. Defendant performs these affirmative acts with knowledge of the ’615 Patent and with intent, or willful blindness, that they cause the direct infringement of the ’615 Patent.

77. Enpulz has suffered damages as a result of Defendant’s direct and indirect infringement of the ’615 Patent in an amount to be proved at trial.

78. Enpulz has suffered, and will continue to suffer, irreparable harm as a result of Defendant’s infringement of the ’615 Patent, for which there is no adequate remedy at law, unless Defendant’s infringement is enjoined by this Court.

**COUNT IV**
**(Infringement of the ’158 Patent)**

79. Paragraphs 1 through 31 are incorporated by reference as if fully set forth herein.

80. Enpulz has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the ’158 Patent.

81. Defendant has and continues to directly infringe the ’158 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by one or more of making, using, offering to sell, selling, importing into the United States, and/or exporting from the United States the Accused Products that satisfy each and every limitation of one or more claims of the ’158 Patent. The Accused Products include, but are not limited to, vehicles with Defendant’s ADAS systems, including the Active Speed Limit Assist System and the Active Brake Assist, and the E-ACTIVE BODY CONTROL System with Road Surface Scan, included in all

trims and configurations, such as the 2026 Mercedes-Maybach GLS 600. The 2026 Mercedes-Maybach GLS 600 is exemplary and representative of the Accused Products.

82. For example, Defendant has and continues to directly infringe at least Claim 7 of the '158 Patent by making, using, offering to sell, selling, and/or importing the Accused Products into the United States, and/or exporting from the United States the Accused Products that include vehicles with Defendant's ADAS systems, including the Active Speed Limit Assist System and the Active Brake Assist, and the E-ACTIVE BODY CONTROL System with Road Surface Scan, or equivalents thereof, such as in the 2026 Mercedes-Maybach GLS 600, among other products.

83. The 2026 Mercedes-Maybach GLS 600 performs a method performed by a wheel-based vehicle configured to travel along a roadway environment, the wheel-based vehicle having both a first suspension element servicing a first wheel and a second suspension element servicing a second wheel, the method comprising: generating, based on reflected electromagnetic waves associated with the roadway environment, a first prediction that the first wheel will contact a first roadway condition at a first time and a second prediction that the second wheel will contact a second roadway condition at a second time. For example, the 2026 Mercedes-Maybach GLS 600 includes an electronically controlled suspension system that scans for bumps or potholes on the road ahead and promptly adjusts the vehicle's suspension accordingly on each wheel. By way of further example, the 2026 Mercedes-Maybach GLS 600 has a double wishbone front suspension and multilink rear suspension on its front and the rear wheels, respectively.

| Chassis | |
|---|---|
| Suspension | **4-wheel independent double-wishbone front/multilink rear with self-leveling E-ACTIVE BODY CONTROL** |


[42]

Standard

**E-ACTIVE BODY CONTROL**

An innovative suspension combines enhanced capabilities with uncanny comfort. E-ACTIVE BODY CONTROL can scan the road surface ahead via a stereo camera and adapt the spring rate, damping and leveling at each wheel. Benefiting from the vehicle's 48-volt electronics, the system can quickly counteract lean, pitch and dive, and even tilt into curves, to quell uneven surfaces and reduce the forces felt by passengers. It can even help rock the vehicle free in sand by rapidly "pumping" the suspension.
[43]

E-ACTIVE BODY CONTROL is an electrohydraulic suspension system with variable damping for improved driving comfort. The integrated all-round level control system uses automatic load compensation to ensure the best possible suspension and a consistent level of ground clearance. When driving at speed, the vehicle is lowered automatically to improve driving safety and reduce energy consumption. The suspension setting is adjusted depending on the road surface, vehicle load and the drive program selected. You also have the option of manually adjusting the vehicle level.

Damping adjustment is controlled separately for each wheel and depends on the following factors:

- Driving style, e.g. sporty
- Road condition, e.g. bumps
- Drive program

- **Vehicles with level control:** suspension
  - Spring system and damping
  - Vehicle level (speed-dependent)

[44]

84. By way of further example, the Mercedes-Maybach GLS 600 comprises an

[42] https://www.mbusa.com/en/vehicles/model/gls/maybach/gls600z4#specifications
[43] https://www.mbusa.com/en/vehicles/model/gls/maybach/gls600z4
[44] https://www.mbusa.com/en/owners/manuals/maybach_gls-suv-2026-07-x167-mbux/e-active-body-control/function-of-e-active-body-control

electronically controlled suspension that can detect electromagnetic waves (e.g., through the front camera) for capturing the roadway environment (e.g., potholes, bumps, etc.).

> A number of driving and driving safety systems use radar or ultrasonic sensors and cameras to monitor the surroundings in front of, behind or next to the vehicle.



1 Cameras in the windshield
2 Cameras in the exterior mirrors
3 Front radar
4 Front camera
5 Corner radars
6 Ultrasonic sensors
7 Reversing camera [45]

> E-ACTIVE BODY CONTROL in the GLS also has the curve inclination function CURVE: like a motorcycle, the GLS leans into bends and thereby allows cornering in three stages with practically no centrifugal force. If the GLS is equipped with a stereo multi-purpose camera, ROAD SURFACE SCAN becomes possible: the camera continuously scans the road surface, while the suspension responds in advance to any undulations before the vehicle drives over them and largely compensates for them. In this way, the GLS improves the perceived road quality. [46]

85. The 2026 Mercedes-Maybach GLS 600 performs the steps of selectively configuring the first suspension element to a first suspension setting in response to the first prediction; and selectively configuring the second suspension element to a second suspension setting in response to the second prediction, wherein the first suspension setting differs from the second suspension setting. For example, at least the cameras on the 2026 Mercedes-Maybach GLS 600 capture the potholes and further predict that a pothole will be under the first wheel at the first time. After the pothole is detected, and in response to the prediction, the suspension of the front wheel is adjusted. The 2026 Mercedes-Maybach GLS 600 performs the same function for a second wheel at a second time.

---

[45] https://www.mbusa.com/css-oom/assets/en-us/pdf/mercedes-gls-suv-2026-july-x167-mbux-operators-manual-2.pdf, at 121, 405.
[46] https://media.mbusa.com/news/the-new-mercedes-benz-gls-2020


[47]

Standard

**E-ACTIVE BODY CONTROL**

An innovative suspension combines enhanced capabilities with uncanny comfort. E-ACTIVE BODY CONTROL can scan the road surface ahead via a stereo camera and adapt the spring rate, damping and leveling at each wheel. Benefiting from the vehicle's 48-volt electronics, the system can quickly counteract lean, pitch and dive, and even tilt into curves, to quell uneven surfaces and reduce the forces felt by passengers. It can even help rock the vehicle free in sand by rapidly "pumping" the suspension. [48]

E-ACTIVE BODY CONTROL is an electrohydraulic suspension system with variable damping for improved driving comfort. The integrated all-round level control system uses automatic load compensation to ensure the best possible suspension and a consistent level of ground clearance. When driving at speed, the vehicle is lowered automatically to improve driving safety and reduce energy consumption. The suspension setting is adjusted depending on the road surface, vehicle load and the drive program selected. You also have the option of manually adjusting the vehicle level. [49]

E-ACTIVE BODY CONTROL in the GLS also has the curve inclination function CURVE: like a motorcycle, the GLS leans into bends and thereby allows cornering in three stages with practically no centrifugal force. If the GLS is equipped with a stereo multi-purpose camera, ROAD SURFACE SCAN becomes possible: the camera continuously scans the road surface, while the suspension responds in advance to any undulations before the vehicle drives over them and largely compensates for them. In this way, the GLS improves the perceived road quality. [50]

---

[47] https://www.mbusa.com/en/vehicles/model/gls/maybach/gls600z4#specifications
[48] https://www.mbusa.com/en/vehicles/model/gls/maybach/gls600z4
[49] https://www.mbusa.com/en/owners/manuals/maybach_gls-suv-2026-07-x167-mbux/e-active-body-control/function-of-e-active-body-control
[50] https://media.mbusa.com/news/the-new-mercedes-benz-gls-2020

86. Through demonstrations, testing, repairs, troubleshooting, training, and instructional guidance, such as at trade shows like CES in the United States, Mercedes has used the Accused Products in a manner that directly infringes at least Claim 7 of the '158 Patent. [51]

87. Defendant has and continues to indirectly infringe one or more claims of the '158 Patent by knowingly and intentionally inducing others, including Mercedes' customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology.

88. Defendant, with knowledge[52] that these products, or the use thereof, infringe the '158 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '158 Patent by providing these products to customers and end-users for use in an infringing manner. Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, and instructing its officers, agents, and employees to not review the patents of others, including specifically those related to Defendant's specific industry, with the subjective belief that there was a high probability that Defendant would learn of its infringing activities, thereby remaining willfully blind to the '158 Patent at least as early as the issuance of the '158

---

[51] *See, e.g.,* https://www.linkedin.com/posts/ola-k%C3%A4llenius_ces2024-ces-gclass-ugcPost-7151590736092688385-QXQO/; https://janglednerves.com/experiences/mercedes-benz-ces-2024; https://media.mercedes-benz.com/ces2024.

[52] Defendant's corporate predecessor, Daimler AG, cited to the '158 Patent family in connection with at least one of its own foreign patent applications, including DE102010044263A entitled "Device and method for controlling an active chassis of a vehicle," which was published on March 8, 2012. Accordingly, Defendant had knowledge of the '158 Patent as early as March 8, 2012, if not sooner. *See* https://patents.google.com/patent/US10479158B2/en?oq=10%2c479%2c158#citedBy; https://patents.google.com/patent/DE102010044263A1/en?oq=10%2c023%2c020+.

Patent.

89. Defendant has and continues to induce infringement by others, including customers and end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the ’158 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce infringement by its customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant’s websites, product literature and packaging, and other publications.[53] For example, Defendant provides customers and end-users with Operator’s Manuals for their specific vehicles, as well as access to other vehicle information. On information and belief, Defendant’s Operator’s Manuals and other vehicle information documents are prepared to instruct customers and end-users on how to use the Accused Products in an infringing manner. On information and belief, ADAS systems, such as the Active Speed Limit Assist System and the Active Brake Assist, and the E-ACTIVE BODY CONTROL System with Road Surface Scan are on automatically, and therefore, the operation of the Accused Products necessarily infringes the ’158 Patent. Alternatively, Defendant’s instructional materials, such as the Operator’s Manuals, instruct Defendant’s customers and end-users on how to enable the infringing systems, thereby inducing infringement of the ’158 Patent.

90. Because of Defendant’s inducement, Defendant’s customers and end-users use the Accused Products in a way Defendant intends and directly infringes the ’158 Patent. Defendant performs these affirmative acts with knowledge of the ’158 Patent and with the intent, or willful

---

[53] *See* 2026 Mercedes-Maybach GLS 600 Operator’s Manual, available at: https://www.mbusa.com/css-oom/assets/en-us/pdf/mercedes-gls-suv-2026-july-x167-mbux-operators-manual-2.pdf.

blindness, that the induced acts directly infringe the ’158 Patent.

91. Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the ’158 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant’s affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others’ use and manufacture of the Accused Products such that the ’158 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the ’158 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the ’158 Patent. The accused components include, but are not limited to, the hardware and software components of Mercedes’ ADAS systems and E-ACTIVE BODY CONTROL. Defendant performs these affirmative acts with knowledge of the ’158 Patent and with intent, or willful blindness, that they cause the direct infringement of the ’158 Patent.

92. Enpulz has suffered damages as a result of Defendant’s direct and indirect infringement of the ’158 Patent in an amount to be proved at trial.

93. Enpulz has suffered, and will continue to suffer, irreparable harm as a result of Defendant’s infringement of the ’158 Patent, for which there is no adequate remedy at law, unless Defendant’s infringement is enjoined by this Court.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Enpulz prays for relief against Defendant as follows:

a. Entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of the Patents-in-Suit;

b. An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of the Patents-in-Suit;

c. An order awarding damages sufficient to compensate Enpulz for Defendant's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

d. Entry of judgment declaring that this case is exceptional and awarding Enpulz its costs and reasonable attorney fees under 35 U.S.C. § 285; and

e. Such other and further relief as the Court deems just and proper.

Dated: October 5, 2026

Respectfully submitted,

*/s/ Vincent J. Rubino, III*

Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@frlip.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@frlip.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@frlip.com
**Fabricant, Rubino & Lambrianakos LLP**
411 Theodore Fremd Ave., Ste. 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

***ATTORNEYS FOR PLAINTIFF ENPULZ AUTOMOTIVE LLC***